IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN HANCOCK, | § | |
| | § | |
| *Plaintiff,* | § | SA-20-CV-00785-ESC |
| | § | |
| vs. | § | |
| | § | |
| SECURITAS SECURITY SERVICES | § | |
| USA, INC., | § | |
| | § | |
| *Defendant.* | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court in the above-styled cause of action is Defendant's Motion for Summary Judgment [#35]. Plaintiff has filed a response to the motion [#36], and Defendant has filed a reply [#37]. The motion is now ripe for the Court's review. For the reasons that follow, the Court will **grant** the motion.

## I.  Background

Plaintiff John Hancock filed this action in state court against Defendant Securitas Security Services USA, Inc. (hereinafter "Securitas"), his employer. Hancock's First Amened Petition, the current live pleading, alleges that Securitas discriminated against him on the basis of a perceived or actual disability when it demoted him from a Vice President to Branch Manager position and subjected him to a pay cut from an expected $250,000 a year to $85,000 a year. The Petition includes the following causes of action: disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act (ADA) and Chapter 21 of the Texas Labor Code; and retaliation in violation of the ADA, Texas Labor Code, and Title VII of the Civil Rights Act of 1964 (Title VII).

Securitas removed Hancock's First Amended Petition on the basis of federal question and diversity jurisdiction and, after the exchange of discovery, filed a motion for partial summary judgment, arguing that it was entitled to summary judgment on Hancock's failure-to-accommodate claims under the ADA and Texas Labor Code because Hancock failed to exhaust his administrative remedies.  In that motion, Securitas also argued Hancock's Title VII retaliation claim failed as a matter of law because Hancock did not engage in any protected activity under Title VII's anti-retaliation statute.  The Court denied the motion, finding that Securitas waived its exhaustion argument by failing to plead or otherwise provide Hancock with notice that it intended to rely on this defense.  In doing so, the Court determined that Hancock could pursue his disability discrimination claims under the ADA and Texas Labor Code on both theories, disparate treatment and a failure to accommodate, as well as his ADA and Texas Labor Code retaliation claims based on complaints about such conduct.  Finally, the Court also rejected Securitas's argument that Hancock did not engage in any Title VII protected activity, finding Hancock did engage in protected activity when he filed a Charge of Discrimination with the Texas Workforce Commission and Equal Employment Opportunity Commission on February 5, 2019, complaining of racial discrimination against non-Caucasian Securitas employees.

Securitas subsequently filed a second motion for summary judgment, which is currently pending before the Court.  In this motion, Securitas seeks summary judgment on all of Hancock's claims.  Securitas contends that Hancock cannot prevail on his claims of disability discrimination or failure to accommodate under the ADA or Texas Labor Code because Hancock was not disabled and because he received the accommodations he requested.  Securitas also argues it has produced evidence of a legitimate, non-discriminatory reason for Hancock's demotion.  Secondly, Securitas renews its argument that Hancock cannot prevail on his

retaliation claims under Title VII or the Texas Labor Code, arguing there is no evidence that he engaged in any protected activity prior to his demotion.  Finally, Securitas argues that Hancock cannot prevail on his retaliation claim under the ADA because there is no evidence to support the requisite causal nexus between Hancock's alleged protected activity and his demotion and Hancock has failed to rebut its legitimate reason for demoting him.  The motion is ripe for the Court's review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions,

affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. Summary Judgment Record

Construing any evidentiary disputes in Hancock's favor, the summary judgment record establishes the following facts relevant to Hancock's claims. Hancock first began working for Securitas in January 2015 and was promoted to Director of Operations for Central Texas in March 2017. (Am. Pet. [#1-2], at ¶¶ 7–8; Answer [#6], at ¶ 7–8.) Shortly thereafter, Hancock was again promoted to Vice President of Response Services North America. (Am. Pet. [#1-2], at ¶ 9; Answer [#6], at ¶ 9.)

Hancock had several injuries during his time with Securitas. First, in 2016, he suffered a minor injury to his foot, which required the use of a cane for several weeks. (Hancock Dep. [#36-2], at 33–36.) Subsequently, he suffered a hip injury, which resulted in ongoing arthritis. (*Id.* at 42–43.) Finally, in December 2017, a few weeks after his promotion to the Vice President position, Hancock suffered a back injury while at work. (*Id.* at 48.) He and coworker Richard Holt ran into one another accidentally on the way to the copy machine. (*Id.*) Holt responded with horseplay, taking Hancock by the shoulders and dropping him to the floor with a foot sweep, which unintentionally crushed his T-12 vertebrae. (*Id.*) To avoid further injury, Hancock's doctor ordered him to wear a full-body back brace that extended from his hips to his chin, and he wore the brace whenever he was out of bed from February to July 2018 until he eventually had back surgery to address the injury. (*Id.* at 57–58, 110.) Hancock never requested leave under the Family and Medical Leave Act for any of these injuries and only missed a minimal amount of work. (*Id.* at 42.) However, Hancock maintains that he did request an

accommodation from Dawn Bowen, his local Human Resources Manager, due to his arthritic hip—the use of a large corner office closer to the front area of their office—but Bowen denied the request.  (*Id.* at 42–44.)

In early April 2018, while Hancock was still in his back brace, he attended the Masters Tournament on behalf of Securitas, as he had in years past.  (*Id.* at 92–93.)  Hancock anticipated being staffed at the front gate, where his responsibility would be welcoming patrons to the event and screening for fraudulent badges.  (*Id.*)  But this year, he was staffed at the back gate where he perceived he was less visible and out of view.  (*Id.*)  Hancock believes he was isolated from other Securitas employees and the public at the Masters due to his back condition and the fact that he needed to use a cane and wear a brace.  (*Id.* at 122–23.)  In support of his allegation, Hancock has provided the Court with an e-mail between Bill Barthelemy (former Chief Operating Officer of Securitas North America and Hancock's supervisor when he was in his Vice President position) from March 2017 regarding the previous year's Masters Tournament addressing concerns about placing Hancock (who was using a cane at the time) at a location where less walking was required and where he could "use his cane out of sight."  (Mar. 2017 Email [#36-2], at 200.)

Around the same time as the 2018 Masters, Securitas's Human Resources Department received a complaint from three employees (Maryann Novajosky, Nancy Polwort, and Monika Brown), all of whom were direct reports to Hancock.  (H.R. Summary and Notes [#37], at 71–74.)  According to a Human Resources summary of these complaints, employees working for Hancock were "at the end of their rope" regarding various issues in the work environment that had arisen since Hancock was promoted to Vice President.  (*Id.*)  The summary states that Hancock arrives late to the office every day between 10:00 and 10:30 a.m., does not return calls

or emails, has asked not to be copied on work emails and is therefore disconnected from operations, makes inappropriate comments about his 15-year-old son and wife, violated company policy by bringing his wife to work for a week, and made an off-color joke about training for the Special Olympics when asked about his physical condition while visiting a Nike store in his brace on behalf of Securitas. (*Id.* at 71–72.) An e-mail from Novajosky to Susan Critelli, Head of Human Resources for Corporate Services, dated April 4, 2018, is consistent with the investigation notes regarding the three coworker complaints and requests a meeting to discuss "issues that have arisen since John Hancock took over the position as Vice President of the Security Response team" on behalf of herself, Polwort, and Brown. (Novajosky E-mail [#37], at 76.) Critelli also provided sworn deposition testimony regarding the work environment complaints and her meeting with the three women about their concerns. (Critelli Dep. [#36-2], at 256–57.)

The Human Resources summary also details five complaints from Securitas customers regarding Hancock that Securitas claims it received between January and April 2018. (H.R. Summary and Notes [#37], at 71–74.) Sworn testimony from Barthelemy states that he received the complaints from Lululemon, the Gap, Ferguson, YRC, and 24-Hour Fitness, and that Ferguson (one of Securitas's largest clients) threatened canceling its account due to concerns about Hancock's lack of responsiveness to client calls and emails. (Barthelemy Dep. [#36-2], at 208.) According to the summary, in addition to complaining about Hancock's lack of responsiveness, the Lululemon and Gap complaints also concerned Hancock's failure to appropriately respond to and remedy sexual harassment of Lululemon and Gap employees by Securitas security guards. (H.R. Summary and Notes [#37], at 71–74.) The complaint from YRC concerned Hancock purportedly telling a client representative that he (Hancock) had

cancer.  (*Id.*)  Related to these alleged complaints, the summary judgment record establishes that, in March 2018, Securitas lost its contract with Lululemon for its New York City stores, contracts for which Hancock was responsible.  (Lululemon E-mail [#37], at 68.)

After Human Resources received the customer and coworker complaints, Critelli and Barthelemy held a virtual meeting with Hancock regarding the various issues raised in the complaints.  (Critelli Dep. [#36-2], at 254.)  Then on April 25, 2018, Securitas demoted Hancock from his Vice President position to Branch Manager of Central Texas.  (Am. Pet. [#1-2], at ¶ 22; Answer [#6], at ¶ 22.)  The demotion letter from Barthelemy to Hancock states that the reason for his demotion was his lack of responsiveness to clients and inappropriate comments to clients and coworkers.  (Demotion Ltr. [#37], at 70.)  Hancock believes that he was demoted because of his back injury.  (Hancock Dep. [#36-2], at 122–23.)

Hancock filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and Texas Workforce Commission (TWC) on February 5, 2019, complaining of disability discrimination, race discrimination, and retaliation.  (EEOC Charge [#25], at 19–21.)  Specifically, Hancock alleged in his Charge that he broke his back and was required to wear a back brace at all times, except in bed, after the injury.  (*Id.*)  Hancock claims in his Charge that wearing his back brace did not prevent him from performing any of his essential job duties but Securitas nonetheless (1) reassigned him at the 2018 Masters to a location out of public view out of "sensitivity to his condition," (2) decided not to invite him to attend the 2019 Masters, and (3) demoted him for discriminatory reasons.  (*Id.*)  Hancock also recounted incidences in which he witnessed Securitas engage in race discrimination and discrimination against military service members towards other employees.  (*Id.*)

Over one year later, in early June 2020, while Hancock continued to work for Securitas as a Branch Manager, Hancock sent a lengthy complaint to Sheree Ross, Vice President of Human Resources, complaining of "an extremely toxic and hostile work environment" due primarily to the actions of Assistant Vice President Gayle Funk and Human Resources Manager Dawn Bowen.  (Complaint to H.R. [#35], at 49–50; Hancock Dep. [#35], at 38–39.)  Hancock's complaint calls Funk a "tyrant and a bully" and accuses him of engaging in false billing practices; yelling, cursing, and verbally abusing him and other Securitas employees; threatening employees with termination and other retributory actions; and making inappropriate statements about the employment team.  (Complaint to H.R. [#35], at 49–50.)

### IV.  Analysis

Securitas is entitled to summary judgment as a matter of law on all of Hancock's claims. First, regarding his claims of disability discrimination under the ADA and Texas Labor Code, Hancock has failed to produce sufficient evidence to support a claim for failure to accommodate his alleged disability.  As to his theory of disparate treatment on account of his disability, regardless of whether Hancock could establish a *prima facie* case of disability discrimination under the ADA and Texas Labor Code, he has not established that a genuine dispute of material fact exists from which a reasonable factfinder could determine that Securitas's stated reason for his demotion—performance issues—was pretext for illegal discrimination.  Hancock's Title VII retaliation claim also fails as a matter of law because no reasonable jury could find that Hancock's alleged complaints about race and gender discrimination led to his demotion.  Finally, for these same reasons, Hancock cannot prevail on his retaliation claims under the ADA and Texas Labor Code.

## A.     Disability Discrimination under the ADA and Texas Labor Code

Hancock alleges Securitas discriminated against him in violation of the ADA and Texas Labor Code by failing to accommodate his disability and demoting him on account of his disability.  (Am. Pet. [#1-2], at ¶¶ 39–45, 50–56.)  The ADA and Texas Labor Code prohibit discrimination in employment based on a disability.  42 U.S.C. § 12112(a); Tex. Lab. Code § 21.001, *et seq.*  A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment and is analyzed separately under the law.  *Windhauser v. Bd. of Supervisors*, 360 Fed. App'x 562, 565 (5th Cir. 2010).  As both the Texas Labor Code and ADA prohibit disability discrimination, courts look to analogous federal precedent when interpreting the state statute.  *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006).

Securitas seeks summary judgment on Hancock's disability discrimination claims on the basis that Hancock is unable to prove that his back injury rendered him disabled or that Securitas denied him any requested accommodation. Additionally, Securitas's motion argues that it had a legitimate, non-discriminatory reason for Hancock's demotion—customer and coworker complaints about performance and work-environment issues.

With regard to the failure-to-accommodate claims, the Court agrees with Securitas that Hancock has failed to produce any evidence of a request for accommodation that was denied by Securitas.  As to his disparate treatment claims, applying the burden-shifting framework applicable to such claims, the Court finds that even if Hancock could establish his *prima facie* case, he has failed to produce sufficient evidence to prove that Securitas's stated reason for his demotion was pretext for unlawful discrimination.  The Court will therefore grant Securitas summary judgment on Hancock's claims of disability discrimination.

### i.      **Failure to Accommodate**

The ADA makes clear that "an employer's obligation to provide a 'reasonable accommodation,' when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability to perform the essential functions of his or her job." *Burch v. Coca–Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997).  To prevail on this theory of his disability discrimination claim, Hancock must prove that he is a "qualified individual with a disability" and Securitas failed to make "reasonable accommodations" for a known disability and its limitations.[1]  *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

Hancock bears the initial burden "to specifically identify the disability and resulting limitations, and to suggest reasonable accommodations." *Patton v. Jacobs Eng'g Group*, 874 F.3d 437, 444 (5th Cir. 2017) (internal citation and quotation omitted).  "Although the employee need not utter any magic words, she 'must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason.'" *Id.* (quoting *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009)).  Securitas argues that Hancock cannot prove this essential element of his claim because there is no evidence that Hancock requested any accommodation for his back injury that was not granted.

---

[1] The burden-shifting framework applicable to disparate treatment claims, discussed *infra*, is not applicable to failure-to-accommodate claims under the ADA.  *See Cohen v. Univ. of Tex. Health Ctr.*, 557 Fed. App'x 273, 277 n.3 (5th Cir. 2014) (noting that reasonable accommodation claims under the Rehabilitation Act are not subject to the *McDonnell Douglas* burden-shifting standard); *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997) (concluding that *McDonnell Douglas* framework is "unnecessary and inappropriate" for a failure-to-accommodate claim under the ADA); *see also Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (explaining that, due to similarities between ADA and Rehabilitation Act, the jurisprudence interpreting either section is applicable to both).

In making this argument, Securitas directs the Court to Hancock's deposition testimony that he requested additional time to get from place to place due to his back injury and his admission that Bowen accommodated this request.  (Hancock Dep. [#36-2], at 50.)  The Court agrees with Securitas that because this accommodation was granted, it cannot serve as the basis for Hancock's disability discrimination claim.  The Court also agrees with Securitas that Hancock did not make any other explicit requests for accommodation related to his back injury. However, Hancock did request to move to an office closer to the centralized office area so that he was not required to walk so far throughout the workday, but this request was related to his hip arthritis.  (*Id.* at 123–24.)  Hancock is not advancing a theory of failure to accommodate based on his hip arthritis or this accommodation request.

The only basis upon which Hancock could advance a failure to accommodate claim based on his back injury is an implicit request to perform his job in a back brace.  Hancock did not expressly ask Securitas if he could wear a back brace at work; he simply provided Securitas with a doctor's note that he was required to wear the back brace anytime he was out of bed and subsequently wore the back brace at all times while performing his job during the months leading up to his demotion.  (*Id.* at 110.)  The Court agrees with Securitas that there is no evidence that it ever denied Hancock's request to wear a back brace or otherwise prevented him from wearing the ordered back brace in the months leading up to his back surgery.  Nor is the Court persuaded by Hancock's theory that Securitas failed to accommodate his disability by treating him differently because of his back brace.  This is simply the repackaging of his disparate treatment claim.

Hancock testified repeatedly in response to questions about the nature of his request for an accommodation that he asked Securitas to "just to let [him] do [his] job," as he was "fully

capable of doing so," and "to be treated fairly," despite his back injury.  (*Id.* at 111, 117.)
Hancock further explained that his back brace did not prevent him from doing his job but helped
him do his job but he was nonetheless reassigned "from the front gate to a hidden booth in the
back of the course" when he showed up at the Masters in his back brace.  (*Id.* at 92.)  Subjecting
someone to an adverse action *because* of an accommodated disability is not equivalent to
refusing to accommodate that disability in the first instance.  Hancock is already advancing this
claim through his theory of disparate treatment at the Masters and his demotion.  Securitas is
entitled to summary judgment on Hancock's failure-to-accommodate claim.

  **ii.**  **Disparate Treatment**

  Hancock also alleges that Securitas demoted him on account of his disability, i.e., that he
was subject to disparate treatment due to his back injury.  In cases relying on circumstantial
evidence of discrimination, as here, this Court applies the burden-shifting framework recognized
in the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Caldwell v.
KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).  Under *McDonnell Douglas*, Hancock bears the
initial burden to establish his *prima facie* case of discrimination.  *Id.*  To establish a *prima facie*
case of disability discrimination under either statute, a plaintiff must show that (1) he had a
disability within the meaning of the ADA, (2) he was qualified and able to perform the essential
functions of his job, and (3) he suffered an adverse employment action because of his disability.
*Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).  If Hancock makes such a
showing, a presumption of discrimination arises, and Securitas must articulate a "legitimate non-
discriminatory reason for the adverse employment action."  *Caldwell*, 850 F.3d at 241 (internal
citation and quotation omitted).

The burden then shifts back to Hancock to produce evidence from which a jury could conclude that the employer's stated reason for the adverse employment action is really pretext for unlawful discrimination.  *Id.*  "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."  *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (internal quotation marks omitted).  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

### (a)  *Prima Facie* **Case**

Securitas argues that Hancock cannot prove his *prima facie* case of disability discrimination under this theory because he has judicially admitted he is not disabled.  The Court disagrees with Securitas's characterization of the summary judgment record and rejects any argument that Hancock has judicially admitted he is not disabled.  The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; a record of such impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102.  *See also* Tex. Lab. Code § 21.002(6).  An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been "subjected to a prohibited action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  "Major life activities" are those activities that are of "central importance to daily life," and include such activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

*Id.* at § 12102(2)(A); 29 C.F.R. § 1630.2(i).  *See also* Tex. Labor Code § 21.002(11-a).  Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact.  *Arthur v. BNSF Ry. Co.*, 697 Fed. App'x 826, 828–29 (5th Cir. 2017).

Securitas argues that Hancock cannot establish that he is disabled because he has judicially admitted that he could perform all the essential job duties of his position.  Hancock pleads in his Amended Petition that his "back brace did not prevent him from performing any of the essential job duties of VP of Response Services North America"; that he "was able to meet the heavy travel requirements throughout the U.S. and Canada, work in the office, meet clients, and perform all other duties as assigned or required for the position"; and that he "performed his duties extremely well."  (Am. Pet. [#1-2], at ¶¶ 16–18.)  If Hancock has admitted to being able to perform all the essential job duties of his position, Securitas argues that he cannot suffer from a disability because the job requirements of his Vice President position are "inclusive of" all major life activities enunciated by the ADA and Texas Labor Code.  (Summ. J. Mtn. [#35], at 14.)  This argument is wholly without merit.

Hancock has not judicially admitted that he is not disabled.  The portion of his pleadings quoted by Securitas in its motion for summary judgment merely plead that Hancock was qualified and able to perform the essential functions of his job, which is the second essential element of his disability discrimination claim.  Moreover, Hancock testified that he could perform his job duties *with* the accommodation of a back brace, and the job description for his position states that he "must have the physical and mental capacity to effectively perform all essential functions" of the job "with or without a reasonable accommodation."  (Hancock Dep.

14

[#36-2], at 100; Job Description [#35], at 46.)  By pleading that he is able to perform his job, Hancock says nothing about whether his back injury substantially limits a major life activity, what accommodations he requires to be able to perform the major life activity of working, or whether he suffered from a disability for purposes of establishing the first element of his *prima facie* case of disability discrimination.

To be sure, Hancock's job description requires the ability to perform some functions that overlap with the list of major life activities included in the federal and state disability statutes, such as lifting and moving up to 10 pounds and occasional lifting and moving up to 25 pounds, talking, and hearing.  (Job Description [#35], at 45–47.)  Yet the job description could not possibly address all activities that are "of central importance" to daily living.  Moreover, even if it addressed every single activity listed in the statutes and regulations, the statutory and regulatory lists of major life activities were not intended to be exhaustive.  *See* 29 C.F.R. § 1630.2(i) (providing non-exhaustive list of major life activities for purposes of ADA).

Hancock's sworn responses to interrogatories[2] exchanged in discovery list numerous major life activities he alleges were limited by his back injury, including caring for oneself, sleeping, aerobic exercise, sex with his wife, and playing on the floor with his grandchildren. (Interrog. Resp. [#36-2], at 1–2.)  Hancock consistently testified in his deposition to the same— that his back injury impairs his ability to sleep, to have sex with his wife, to play with his grandchildren, and to exercise.  (Hancock Dep. [#36-2], at 51–52.)  Hancock's statements in his

---

[2] "Interrogatory responses may constitute competent summary judgment evidence if they satisfy the other requirements of Rule 56."  *Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 51–52 (1983)).  Because Hancock's interrogatory responses are sworn as true and correct under penalty of perjury, they are verified and satisfy Rule 56's evidentiary requirements.  *See id.*

pleadings that he could perform all essential functions of his job with Securitas do not negate the essential element of Hancock's disability discrimination claims that he suffered from a disability.

The only other argument Securitas advances regarding Hancock's *prima facie* case is a cursory assertion that there is no evidence that Hancock's back injury caused substantial impairment of a major life activity. In making this argument, Securitas does not even attempt to argue why Hancock's identified major life activities were not substantially impaired by his back injury. In light of the inadequate briefing on this argument, the Court declines to address it. Moreover, the Court need not do so. Regardless of Hancock's ability to establish a cognizable disability under the ADA and Texas Labor Code, he cannot prevail on his disability discrimination claim, as he has not raised a material fact issue from which a factfinder could conclude Securitas's stated reason for Hancock's demotion was pretext for discrimination.

### (b)  Pretext

Assuming, arguendo, that Hancock could establish a *prima facie* case of disability discrimination based on his demotion, Securitas is still entitled to summary judgment. Securitas has satisfied its burden to produce evidence of its legitimate, non-discriminatory reason for Hancock's demotion, and Hancock has failed to raise a genuine issue of material fact that this stated reason was pretextual. *See Caldwell*, 850 F.3d at 241.

The summary judgment record contains evidence that in early April 2018, Securitas's Human Resources Department received complaints from three of Hancock's direct reports that they were "at the end of their rope" regarding issues in the work environment since Hancock was promoted to Vice President. (H.R. Summ. and Notes [#37], at 71–74.) According to a summary of the complaints, Hancock was arriving late to work, failed to timely return calls and emails, had violated company policy regarding bringing family members to work, and was witnessed

making an off-color joke to a client.  (*Id.* at 71–72.)  According to sworn deposition testimony by Barthelemy, he had also received complaints from five clients about Hancock's lack of professionalism.  (Barthelemy Dep. [#36-2], at 208; H.R. Summ. [#37], at 71.)  One of the clients, Lululemon, terminated its New York City contracts, contracts for which Hancock was responsible, around the same time.  (Lululemon E-mail [#37], at 68.)  Securitas has satisfied its burden to produce evidence of a legitimate basis for Hancock's demotion.

To survive summary judgment, Hancock must therefore produce sufficient evidence from which a jury could conclude that the real reason for Hancock's demotion was not complaints about his performance but discrimination on account of his disability.  *See Caldwell*, 850 F.3d at 241 Hancock has failed to do so.

There is nothing in the record that suggests Securitas's proffered explanation for Hancock's demotion was "false or unworthy of credence."  *See Jackson*, 602 F.3d at 378–79. Hancock has not produced any statements by other coworkers, clients, or witnesses disputing the existence of client and coworker complaints.  He merely suggests that Securitas could have fabricated the customer complaints, as there are no complaints in writing,[3] and he has no prior disciplinary history that would corroborate Securitas's stated reason for his demotion.  These are arguments regarding the absence of additional evidence to corroborate Securitas's position, not

---

[3] Hancock makes much of Securitas's discovery responses, which respond "none" to requests to produce written complaints by the Gap, YRC, Ferguson, and Lululemon against Hancock.  (Discovery Resp. [#36-2], at 235.)  Yet, Barthelemy testified that the complaints he received from customers were made by phone and not in writing.  (Barthelemy Dep. [#36-2], at 208–09).  The reason for Securitas's interrogatory response stating "none" in response to a request for a description of all complaints against Hancock by these employees for the last five years is unclear.  (Discovery Resp. [#36-2], at 235.)  The summary judgment record contains sworn testimony describing these complaints, Human Resources notes and a summary regarding these complaints, and an e-mail from Hancock acknowledging the loss of Lululemon contracts. The interrogatory response is inconsistent with the rest of the record, but no reasonable juror would credit the interrogatory response of "none" over the remaining weight of the evidence.

evidence from which a factfinder could find in Hancock's favor.  There must be some additional evidence regarding the absence of any written documentation of the customer complaints, e.g., that written documentation of complaints is standard protocol, for this lack of evidence to be probative.  *See, e.g.*, *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) (finding that "a lack of contemporaneous documentation [of customer complaints], alone, is not evidence of pretext; the employee must also demonstrate why the absence of documentation matters").  There is no such evidence here.

The only affirmative evidence Hancock relies upon to establish pretext is his reassignment at the 2018 Masters tournament and the statements of Barthelemy and another employee in their e-mail correspondence (during the prior year's 2017 Masters) expressing concern about Hancock being able to stand all day in the ball fields with his cane and a desire to allow Hancock to "use his cane out of sight" of others.  (E-mail [#36-2], at 200–01.)  This evidence is insufficient to generate a genuine dispute of material fact about the actual reason for Hancock's demotion, as no reasonable juror could conclude based on this evidence alone that Securitas's real reason for Hancock's demotion was disability discrimination.

Hancock attempts to analogize his case to the Fifth Circuit's decision in *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999), arguing that the temporal proximity between the Masters event and his demotion (along with other evidence) is sufficient to generate the necessary fact issue.  *Shackleford* was a retaliation case on the basis of race in which there was close temporal proximity between protected activity and termination.  Yet, in addition to the temporal proximity of these events, there was also evidence that a white employee had engaged in the same protected conduct but had not been terminated.  *Shackleford*, 190 F.3d at 409.

Hancock produces no such evidence of disparate treatment of a comparator employee here.[4] Although suspicious timing of an adverse employment action may be some evidence of pretext, "[t]iming alone is not sufficient absent other evidence" to rebut a legitimate basis for the employment action. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016) (quoting *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir. 1998)).

Hancock may believe that the real reason for his demotion was his disability, but a plaintiff cannot merely rely on his subjective belief that discrimination occurred in establishing pretext. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997). The e-mail remarks of Barthelemy and another Securitas employee from 2017 (one year prior to Hancock's reassignment at the 2018 Masters and his demotion), without more, do not sufficiently undermine the credibility of Securitas's stated reason for Hancock's demotion, in light of the sworn testimony and other competent summary judgment evidence of customer and client complaints. Securitas is entitled to summary judgment on Hancock's ADA and Texas Labor Code disparate treatment claims.

## B.     ADA Retaliation

For the same reason, Securitas is entitled to summary judgment on Hancock's ADA retaliation claim. The same burden-shifting framework applies to Hancock's retaliation claim under the ADA. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). To establish a *prima facie* case of unlawful retaliation, Hancock must show that: (1) he engaged in an activity

---

[4]     Hancock attempts to argue that there is evidence that no other employee in a management position has been demoted based on customer or coworker complaints. (*See* Summ. J. Resp. [#36], at 21.) But his "evidence" of a comparator is only a discovery response by Securitas that there have been no management officials demoted or terminated in the last five years. (Interrogatory Resp. [#36-2], at 288.) This evidence merely establishes that there have been no other management-level demotions or terminations. There is no evidence before the Court that any other management employee was the subject of coworker or customer complaints and was nonetheless not disciplined.

protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Id.* If Hancock establishes a *prima facie* case of retaliation, Securitas must then come forward with a legitimate, non-retaliatory reason for its action. *Id.* Hancock must then generate a material fact issue as to pretext. *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) (internal citation and quotation omitted). Securitas argues that Hancock's ADA retaliation claim fails because he cannot establish a *prima facie* case and because it has met its burden to establish a legitimate, non-discriminatory reason for demoting Hancock.

Hancock has established a *prima facie* case of retaliation. His requests for accommodations (including any request to wear his back brace at work and for more time to get from one place to another) constitute protected activity under the ADA, as the issue in a retaliation case is not whether or not the requested accommodations were granted. *See Tabatchnik v. Cont'l Airlines*, 262 Fed. App'x 674, 676 (5th Cir. 2008)). Hancock has also suffered an adverse employment action—his demotion. It is also plausible that Hancock could establish that his reassignment at the Masters and his failure to receive an invitation to return to the Masters the following year were also adverse employment actions under the more lenient standard that applies to retaliation claims.

The definition of an adverse employment action in the retaliation context is broader than in the discrimination context. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015). In a retaliation case, the employment action need not be an "ultimate employment decision," so long as it is "materially adverse," in that a reasonable employee subjected to such action would be dissuaded from making or supporting a charge of

discrimination.  *Id.* at 945 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  Hancock testified that attendance at the Masters was viewed as a reward among employees, and he also testified that participating in the event made employees eligible for additional bonuses, so there were potential financial repercussions of being excluded as well. (Hancock Dep. [#36-2], at 88.)  Given the foregoing, Hancock has raised a fact issue as to whether his treatment during and exclusion from the Masters Tournament constitute additional adverse employment actions under the ADA.

As to the causal connection element, close temporal proximity between an employee's protected activity and an adverse action is sufficient to establish the causal connection element of a *prima facie* case of retaliation.  *Feist*, 730 F.3d at 454.  Hancock broke his back in December 2017 and began wearing a back brace at work in February 2018, an accommodation for his alleged disability, less than two months prior to his participation in the Masters and his demotion.  Hancock has submitted sufficient evidence to support a *prima facie* case of ADA retaliation here.

However, for the same reasons discussed with respect to his disability discrimination claim, Hancock has failed to produce sufficient evidence of pretext to survive summary judgment.  His evidence of suspicious timing and the statements of Barthelemy and another employee in their 2017 e-mail correspondence regarding concerns about Hancock's ability to stand for the entire day and his use of cane are insufficient, without more, to prove that the stated reason for his demotion was pretext for unlawful retaliation.

## C.    Title VII Retaliation

Hancock also alleges that Securitas violated Title VII by retaliating against him for reporting discrimination.  (Am. Pet. [#1], at ¶ 47.)  In order to prevail on his claim for unlawful

retaliation under Title VII, Hancock must establish that he engaged in activity protected by Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Protected activity under Title VII includes opposing a practice made unlawful by Title VII, such as discrimination based on "race, color, religion, sex, and/or national origin." *See* 42 U.S.C.A. § 2000e-2(a). An employee that files an internal complaint of discrimination engages in a protected activity. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001).

In Securitas's previous motion for summary judgment, it argued that Hancock's only protected activity was requesting an accommodation for his disability, which was not Title VII protected activity because disability status is not a protected class under the Act. The Court rejected this argument and held that Hancock engaged in a protected activity under Title VII by filing a Charge of Discrimination with the EEOC and TWC complaining of race discrimination. (Order [#29], at 9–10.) Securitas now argues that any complaints about race discrimination that could be cognizable under Title VII as protected activity occurred after Hancock's demotion and therefore could not form the basis of any claim of retaliation based on this adverse employment action.

The summary judgment record establishes that Hancock filed his formal EEOC and TWC Charge of Discrimination (which included complaints of race discrimination) in February 2019, after his April 2018 demotion. (EEOC Charge [#25], at 19–21.) Hancock's response to Securitas's motion for summary judgment does not identify any other adverse action aside from his demotion for purposes of his Title VII retaliation claim. The only other evidence in the record of any complaint of discrimination cognizable under Title VII is Hancock's interrogatory response stating that he complained about race and gender discrimination to Bowen and Dave Schiller, his supervisor when he was a Branch Manager prior to his promotion to the Vice

President position.   (Interrog. Resp. [#36-2], at 2–3.)   Hancock's response states that he had complained about witnessing and experiencing discrimination against women and non-Caucasians being paid less than Caucasians in similar positions.   (*Id.*)   There is no evidence in the record, however, as to when these complaints were made or any further details about the nature of the complaints.

Hancock argues that Schiller left Securitas in February 2018, several months before his demotion, and therefore these complaints of race and sex discrimination were necessarily made prior to his demotion.   Yet, he does not provide any summary judgment evidence to that effect. Moreover, there is no evidence before the Court that Barthelemy, the individual responsible for Hancock's demotion, had any knowledge of the complaints to Bowen and Schiller.   As Hancock points out, Schiller was no longer his supervisor at the time of the demotion and had left Securitas months earlier.

Importantly, when questioned in his deposition if he ever reported race and gender discrimination to anyone, Hancock responded that he did and that his complaint was to Sheree Ross in an email dated June 2, 2020, over two years after his demotion.   (Hancock Dep. [#36-2], at 111, 124–25; Complaint to H.R. [#35], at 49–50.)   Hancock never referenced or described his alleged complaints of race and gender discrimination to Bowen and Schiller in his deposition. Nor could Hancock produce any communications between himself and Schiller when asked for them in discovery, as he had none.   (Production Resp. [#37], at 64.)

On this record, no reasonable jury could find that Hancock's alleged complaints to Schiller and Bowen about race and gender discrimination could have plausibly led to his demotion, given the timing of the demotion.   Additionally, as noted *supra*, Hancock has failed to rebut Securitas's legitimate, non-discriminatory reason for his demotion.   Hancock has failed to

produce a genuine dispute of material fact to support a plausible claim of Title VII retaliation, and the Court will grant Securitas summary judgment on this claim.

**D.      Texas Labor Code Retaliation**

Finally, Securitas also seeks summary judgment on Hancock's Texas Labor Code retaliation claim.  The Texas Labor Code prohibits an employer from retaliating against an employee for engaging in certain protected activities.  Tex. Lab. Code § 21.055.  To establish a *prima facie* claim for retaliatory discrimination in violation of the Texas Labor Code, a plaintiff must show that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal connection existed between his participation in the protected activity and the adverse employment action.  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 526 (Tex. App.—El Paso 2013, no pet.).  Securitas argues that Hancock cannot prevail on this claim because, as with his Title VII retaliation claim, there is no evidence that he engaged in any protected activity prior to suffering any adverse action.

Hancock's Texas Labor Code retaliation claim alleges that he was demoted in retaliation for engaging in the protected activity for requesting accommodations for his disability and reporting discrimination and retaliation he experienced personally and witnessed against other employees.  (Am. Pet. [#1-2], at ¶ 58.)  Hancock concedes in his response to the motion for summary judgment that his accommodation request is not a recognized protected activity for purposes of his Texas Labor Code retaliation claim, citing to a recent Texas Supreme Court decision distinguishing what qualifies as protected activity for purposes of the ADA versus under the Texas Labor Code.  *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58–59 (Tex. 2021) (holding that a reasonable accommodation request is only protected activity under the Texas

Labor Code if it alerts the employer that "unlawful discrimination" is at issue).  Hancock agrees that his accommodation request does not qualify as protected activity under the Texas statute.

However, Hancock continues to argue that his complaints of race and gender discrimination to Bowen and Schiller constitute protected activity under the Texas Labor Code. For the same reasons discussed with respect to Hancock's Title VII retaliation claim, Securitas is entitled to summary judgment on Hancock's Texas Labor Code retaliation claim.  No reasonable factfinder could conclude, based on the record before the Court, that generalized complaints about sex and race discrimination to Bowen and Schiller at some point during his employment with Securitas, without more, were the reason for his demotion by Barthelemy.  Additionally, Hancock has failed to satisfy his burden to establish sufficient evidence that Securitas's proffered reason for his demotion was pretext for unlawful retaliation.

## V.  Conclusion and Order

In summary, Securitas is entitled to summary judgment on all of Hancock's claims. Hancock has failed to produce sufficient evidence from which a reasonable factfinder could conclude that disability discrimination or retaliation on account of his disability were the true reason for his demotion.  He has also failed to produce evidence that he requested any accommodation for his disability that was not accommodated.  Finally, his claims of retaliation under Title VII and the Texas Labor Code fail as a matter of law for the reasons stated herein.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [#35] is **GRANTED**.

**IT IS SO ORDERED.**

SIGNED this 4th day of March, 2022.


_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE